# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| TRACY R. BRADLEY, | : CIVIL ACTION NO. 3:CV-15-2514 |
|---|---|
| Plaintiff | : (Judge Nealon) |
| v. | : |
| Captain HARRIS, et al., | : |
| Defendants | : |

## MEMORANDUM

### I. Background

Plaintiff, an inmate confined in the State Correctional Institution, Albion, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983. He complains of an incident which occurred at his former place of confinement, the State Correctional Institution, Huntingdon ("SCI-Huntingdon"), Pennsylvania. The action is proceeding on Plaintiff's second amended complaint, filed on November 23, 2016. (Doc. 69). Plaintiff challenges a disciplinary hearing and the placement in a dry cell, pending the investigation into the misconduct that resulted in the disciplinary charges. Id. For relief, he seeks compensatory and punitive damages for Defendants alleged violation of Plaintiff's Eighth and Fourteenth Amendment rights. Id. The named Defendants are Department of Corrections Secretary, John Wetzel, and the following SCI-Huntingdon employees: Captain Harris, Lieutenant House,

Superintendent J. A. Eckard, Major Walters, Hearing Examiner Hines and Ms. Connie Green. Id.

Presently before the Court is Defendants' motion to dismiss. (Doc. 70). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion to dismiss will be granted.

## II. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550

U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S.,

Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 FedAppx. 183 (3d Cir.2008).

### III. Allegations in Complaint

In November 2015, Plaintiff states the he was coming out of the visiting hall to enter the room where you change clothes after your visit, when "Officer Bowser and his partner were waiting in the changing room and asked [Plaintiff] if [he] had something in [his] mouth, at which time they told [Plaintiff] to give them what [he] had in [his] mouth and [he] did." (Doc. 69). Plaintiff "explained that Officer Kitchie had gave it to [him] prior to [him] going into the visit hall" and "had told [him] to place the item under [his] clothes, but [he] could not because there was another inmate at the gate way trying to come into the dressing room, so [he] was told to take the times with [him] and to bring them back when [he] came back in after being out on the visit." Id. Plaintiff claims that he tried to explain that "Officer Ritchie gave them to [him] to give to another inmate and these acts were out of necessity for the safety of [his] family." Id

Plaintiff was then "taken to the RHU in SCI-Huntingdon, a call was received and [Plaintiff] was given a Blue smock like apparatus to put on without any underclothes on." Id. Plaintiff "was asked if [he] swallowed anything and [he] told them no." Id. Plaintiff claims that he was then "cuffed to the wall" and that "the hand of the wrist that was hanging" was "hanging to such a degree that the nurse had to repeatedly come and

4

check the blood was still circulating." Id. Plaintiff states that he was "in that room for seventy-two plush hours in the same position" and that his "wrist was hurting [him] very bad." Id. While in the room, Plaintiff states that "[he] was handcuffed to a wall like a slave, like a dog, [he] was forced to lay in [his] own feces wet with [his] own urine, there was no water in the room, the toilet bowl and sink securely covered and taped so that it could not be used, the officers watching [him] told [him] the water was cut off in the room, there was plexy-glass covering the bars, there was no way to flush a toilet, no way to throw anything, there was a camera in the corner of the cell suspended from the ceiling and an officer sitting there the entire time, thus there was no way to discard, throw away any alleged item [he] was to have had." Id. He claims he was then released to an observation room in the RHU. Id.

Plaintiff eventually received an disciplinary hearing for the charge of possession or use of a dangerous or controlled substance. Id. Plaintiff was found not guilty of this charge, but was found guilty of possession of contraband. Id. Plaintiff was sanctioned to sixty (60) days in disciplinary confinement for the misconduct. Id. He claims that Defendants, Ms. Green and Superintendent Eckard upheld the punishment provided by the hearing examiner. Id.

Plaintiff filed the instant action in which he seeks compensatory and punitive damages for "the pain and suffering [he] endured as well as for the illegal disciplinary

confinement." Id. Plaintiff claims that his placement in the dry cell was in violation of his Eighth Amendment protection against cruel and unusual punishment and he challenges his disciplinary proceeding under the Fourteenth Amendment. Id.

IV.     **Discussion**

    **A. Eighth Amendment**

Prison officials must provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs. See Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000). A condition of confinement implicates the Eighth Amendment, if it is so reprehensible as to be deemed inhumane under contemporary standards or deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement means that "the official must both be aware of facts from which the

6

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to cruel and inhumane treatment. A prisoner must also establish a specific deprivation of a single, identifiable basic necessity. Wilson v. Seiter, 501 U.S. 294, 304-05 (1991). The inmate must also demonstrate that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.

This is clearly not a case where the Plaintiff is challenging a long term confinement. On the contrary, Plaintiff, himself, indicates that he was only in the dry cell for seventy-two hours.

It has been recognized that the temporary placement of a prisoner in a dry cell for the purpose of examining his excrement for contraband doe not violate the Eighth Amendment. See Gilblom v. Gillipsie, 435 Fed. App'x. 165 (3d Cir. 2011) (finding no Constitutional violation when an inmate spent approximately 36-hours in close proximity to his excrement while housed in a dry cell to ensure that he had not swallowed drugs). See also, Muchler v. Smith Bail Bonds, LLC., No. 3:15-cv-00093, 2016 WL 3035303, (M.D. Pa., May 26, 2016) (holding placement in a dry cell for three days did not deprive inmate of basic life necessities); Wilson v. Schomig, 863 F.Supp.

789 (N.D. Ill.1994) (ruling that without a showing of physical harm, claim that inmate was forced to sleep on urine and feces-stained mattress in dirty, roach-infested, leaky cell was not enough to make out an Eighth Amendment claim).

In the instant matter, Plaintiff admits he was found with unidentified contraband in his mouth. It was, therefore, reasonable for staff to take precautions to ensure Plaintiff had not swallowed additional contraband by placing him in a dry cell. The mere fact that Plaintiff denied swallowing anything does not make the correctional officers' actions unreasonable. Plaintiff admits he was only housed in the dry cell for approximately seventy-two hours, a period of time that has been deemed acceptable by this and other courts. As such, Plaintiff fails to allege facts sufficient that give rise to a claim for cruel and unusual punishment under the Eighth Amendment.

### B. Fourteenth Amendment Due Process

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law'." Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no

protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred. In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker.[1]

Thereafter, the Court in Hewitt v. Helms, 459 U.S. 460, 471 (1983), stated that a state law which "used language of an unmistakably mandatory character" creates a protected liberty interest. Following Hewitt many courts held that a state regulation can

---

1. In Wolff, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

create a due process interest -- such as freedom from punitive segregation -- if the rule contains mandatory language such as "shall" or "will." E.g., Layton v. Beyer, 953 F.2d 839, 848-49 (3d Cir. 1992).

The Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), however, marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin the Court was presented with the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to 30 days in disciplinary segregation. Id. at 474-76. The Court first found that the approach adopted in Hewitt – described above -- was unwise and flawed. Id. at 481-84. The Court also rejected plaintiff Conner's argument that "any state action taken for punitive reasons encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Id. at 484. The Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of plaintiff Conner's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Court held that the procedural protections in Wolff were inapplicable

because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Court examined the nature of Conner's disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." Id. In the final holding of the opinion, the Court stated "that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff." Id. at 487 (emphasis added).[2]

Even if the Wolff requirements were not complied with at the misconduct hearing, Bradley's complaint, in light of Sandin, is without merit since Bradley does not

---

2. The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Furthermore, the majority in Sandin viewed administrative or protective custody as "not atypical" and within the "ordinary incidents of prison life." 515 U.S. at 484-86. Specifically, the Court stated that "Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." Id. at 486. Consequently, the appropriate point of comparison is between disciplinary segregation and other forms of discretionary segregation, not general population conditions.

have a liberty interest in remaining free from disciplinary confinement and the procedural due process protections set forth in Wolff do not apply. Furthermore, the incidents of disciplinary confinement in the present case are not materially different than those the Supreme Court found to be "not atypical" in Sandin, and they do not differ appreciably from those of administrative custody.

This Court and others within this circuit, applying Sandin in various actions, have found no merit in the procedural due process claims presented. See Marshall v. Shiley, et al., Civil No. 94-1858, slip op. at 7 (M.D. Pa. July 26, 1996)(McClure, J.)(holding, pursuant to Sandin, that where plaintiff alleges only that he was sentenced to sixty days in disciplinary segregation, under Sandin, he cannot assert a claim for the violation of his Fourteenth Amendment rights); Muse v. Geiger, et al., Civil No. 94-0388, slip op. at 4 (M.D. Pa. September 29, 1995) (Nealon, J.) (holding, pursuant to Sandin, that the procedural due process claims are meritless because the punishment twice imposed was thirty (30) days in disciplinary segregation (which differs little from administrative segregation)); Beckwith v. Mull, Civil No. 94-1912, slip op. at 9-12 (M.D. Pa. September 27, 1995) (McClure, J.) (holding, pursuant to Sandin, that the procedural due process claims must fail because the punishment was twenty (20) days in disciplinary segregation); Sack v. Canino, No. CIV. A. 95-1412, 1995 WL 498709, at *1 (E.D. Pa. August 21, 1995) (holding in the alternative, pursuant to Sandin, that the

defendants deserved summary judgment on the procedural due process claims because plaintiff's punishment was thirty (30) days in disciplinary segregation); Brown v. Stachelek, No. CIV. A. 95-522, 1995 WL 435316, at *3-4 (E.D. Pa. July 20, 1995) (holding, pursuant to Sandin, that plaintiff's procedural due process claims would be dismissed because plaintiff's punishment was thirty (30) days in disciplinary segregation); Colatriano vs. Williams, No. CIV. A. 94-292-SCR, 1995 WL 396616, at *2-3 (D. Del. June 23, 1995) (holding, pursuant to Sandin, that neither the Due Process Clause nor state law supported plaintiff's procedural due process claims because his punishment (at most ninety (90) days in "close custody" and a loss of "minimum status") was not outside the scope of his sentence and did not otherwise violate the Constitution). Considering the rules of law set forth in Sandin, the Court finds that Bradley's due process claims resulting from his placement in disciplinary segregation are meritless because he had no protected liberty interest in the first place. Thus, Plaintiff has failed to state a due process claim related to any misconduct charge or any period of confinement in the RHU, and these claims should be dismissed.

### C. **Personal Involvement**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and that the conduct complained of deprived the Plaintiff of

13

rights, privileges or immunities secured by the law or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir.1993); Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 (M.D.Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

Moreover, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir.1976); Parratt, supra. The doctrine of respondeat superior does not apply to constitutional claims. See Ashcroft v. Iqbal, 556 U.S. 662, (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior." ); see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior ) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. Iqbal, 556 U.S. at 675 ("[A] plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."). As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

See also Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing Rode, supra.

Finally, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. Glenn v. Delbalso, 599 Fed.Appx. 457 (3d Cir. 2015)(access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983); Mincy v. Chmielsewski, 506 Fed. App'x. 99 (3d Cir. 2013)(an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement); Brooks v. Beard, 167 Fed. App'x. 923 (3d Cir. 2006)(holding that although the complaint alleges that Appellees responded inappropriately to Brook's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself).

It is apparent from the Plaintiff's allegations that the only roles of Defendants Superintendent Eckard, Secretary Wetzel, Hearing Examiner Hines, and Ms. Green, were all connected to the filing of Plaintiff's grievance and subsequent appeals. However, such claims that these Defendants violated his constitutional rights regarding their handling of his grievance, fails as a matter of law, and these Defendants are entitled to dismissal.

**V.        Leave to Amend**

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile . See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir. 2002). Based on the foregoing, we find futility in allowing Plaintiff to file an amended complaint with respect to the allegations raised in the instant action.

**VI. Conclusion**

Defendants' motion to dismiss Plaintiff's second amended complaint for failure to allege an Eighth or Fourteenth Amendment claim, and for failure to allege personal involvement will be granted.   An appropriate order will follow.

Dated: October 12, 2017                                  /s/ William J. Nealon
                                                                         **United States District Judge**